**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION -- LEXINGTON**

| | |
|---|---|
| **LOIS MONTGOMERY,** | **CIVIL ACTION NO. 5:15-cv-09-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
| Defendant. | |

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 6 & 7). The Plaintiff, Lois Montgomery, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief from an administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

    4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

    5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)).

The claimant bears the burden of proof through the first four steps of the analysis; but if the ALJ reaches the fifth step without finding the claimant disabled, then the burden shifts to the Commissioner. *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). The Commissioner satisfies the burden of proof at the fifth step by finding that the claimant is qualified for—and capable of performing—jobs that are available in the national economy and may rely upon the testimony of a vocational expert ("VE") regarding the range of potential jobs. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423, 425 (6th Cir. 2008).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Lois Montgomery ("Claimant") filed her claim for DIB on March 10, 2004, alleging an onset date of January 28, 2001. [TR 120]. After a hearing before an ALJ on March 6, 2006, the ALJ issued an unfavorable decision on May 11, 2006. [TR 71–82]. However, on June 7, 2007, the Appeals Council remanded Claimant's case because the record contained insufficient evidence regarding Claimant's functional limitations and the ALJ failed to consider the effects of Claimant's obesity upon Claimant's functional limitations. [TR 724]. The same ALJ, Roger L. Reynolds, heard Claimant's case on remand on May 5, 2008, and again denied her claim on February 13, 2009. [TR 43–56]. On May 7, 2009, the Appeals Council, on its own motion, vacated the ALJ's decision and re-remanded the case to address an error with the date last insured and to resolve an inconsistency between the testimony of the Vocational Expert ("VE") and information provided in the Dictionary of Occupational Titles ("DOT") with respect to the VE's testimony

2

regarding Claimant's capability of performing a significant number of unskilled sedentary occupations. [TR 726–29].

As ordered by the Appeals Council, a different ALJ, Gregory O. Varo, heard Claimant's case on re-remand on September 10, 2010 and denied the claim on September 30, 2010. [TR 27–37]. Claimant's request for review was denied by the Appeals Council on November 14, 2011. [TR 19–21]. The claimant appealed that decision to this Court and Senior Judge Forrester reversed and remanded the claim on September 24, 2013. [TR 860–75]. Judge Forrester's order directed consideration of medical records from April 7, 2004, through December 2005, regarding the Claimant's migraine headaches. [TR 871–75]. ALJ Varo held another hearing on August 1, 2014. [TR 1031–73]. That hearing ultimately led to the denial of benefits now before this Court. [TR 850–58].

At the time the ALJ's decision was rendered, Claimant was 50 years old. [TR 856]. Claimant graduated from high school and has past relevant work as a hairdresser and retail store department manager. [TR 856]. She alleges disability due to headaches, severe pain in multiple areas of her body resulting from car accidents and other injuries that limit all of her exertional activities, require her to change positions frequently, and diminish her ability to concentrate. [TR 248]. Claimant's insured status expired on March 31, 2008. [TR 852].

First, the ALJ determined that Claimant has not engaged in substantial gainful activity since her alleged onset date of January 28, 2001. [TR 852]. Second, the ALJ found that Claimant suffers from the following severe impairments: degenerative disc disease cervical spine, status post fusion C5-7 with chronic neck pain; status post left fibula fracture with open reduction internal fixation; degenerative joint disease knees and left ankle, status post right knee surgery x 2; status post right humerus fracture; mild obesity; mild carpal tunnel syndrome, bilateral upper extremities; depressive disorder; and pain disorder. [TR 852]. Third, the ALJ determined that

3

Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 852].

Next, the ALJ reviewed the record to determine Claimant's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In finding Claimant's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) additional treatment; (vi) additional measures used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529. After reviewing all of the evidence, the ALJ determined that Claimant has the RFC to perform a reduced range of sedentary work, with the following limitations:

- Lift 10 pounds frequently and 10 pounds occasionally
- Stand/walk for 4 hours in an 8-hour day, but not more than 1 hour at a time
- Sit 4 hours in an 8-hour day, but not more than 1 hour at a time
- Needs to shift positions hourly
- Pushing/pulling limited to occasional with the upper extremities; but no operation of foot controls with the lower extremities
- Occasionally climb ramps and stairs. Never climb ladders, ropes or scaffold
- Never perform tasks requiring balance, such as at unprotected heights
- Occasionally stoop
- Never kneel, crouch, or crawl
- Occasionally twist and bend
- No rapid or repetitive flexion or extension of the wrists
- Handling, fingering and feeling limited to frequent in the bilateral upper extremities
- No work requiring frequent turning of the head
- No overhead work (reaching or lifting)
- Avoid concentrated exposure to temperature extremes and excess humidity
- Avoid concentrated exposure to dusts, fumes, odors, gases, etc.

- Avoid concentrated exposure to vibration and all vibratory tools
- Avoid all exposure to hazards such as unprotected heights and moving machinery
- Limited to simple, repetitive tasks with no frequent changes in work routines
- Able to have casual contacts with co-workers and supervisors in a non-public work environment
- Requires a low stress work environment with no fast-paced production goals, quotas, etc.

[TR 854].

At step four of the analysis, the ALJ found that, through the date last insured, Claimant was unable to perform any past relevant work. [TR 856]. At step five, the ALJ concluded that, through the date last insured, considering Claimant's age, education, work experience, and residual functional capacity, as well as the testimony of the VE and the Medical-Vocational Guidelines, there were jobs that exist in significant numbers in the national economy that Claimant could have performed [TR 856–57].Therefore, the ALJ found Claimant not disabled. [TR 857]. Claimant exercised her right to bypass Appeals Council review and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm. of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988)

(alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## IV. ANALYSIS

On appeal, Claimant argues that the ALJ erred by failing to comply with this Court's prior order. Claimant represents that the ALJ ignored Judge Forrester's directive to consider all the record evidence pertaining to the nature and severity of Claimant's headaches. The issue for Claimant is that the ALJ explicitly noted his consideration of the April 2004 through December 2005 medical records that he was directed to examine. [TR 855 n.4]. Judge Forrester's order did not direct ALJ Varo to find Claimant had a severe migraine headache impairment. In fact, he expressly disavowed such a ruling, stating that "the inclusion of this additional evidence may or may not have impacted ALJ Varo's RFC determination, [but] evaluating the significance of this evidence is a task more appropriately undertaken by the ALJ, not this Court." [TR 874].

Nonetheless, Claimant might yet prevail if substantial evidence does not support ALJ Varo's determination that the Claimant's migraine headaches were a non-severe impairment. However, the record evidence dictates a contrary result. Agency regulations define a non-severe impairment as a medically determinable "impairment or combination of impairments [that] does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Undoubtedly, the record is replete with evidence that Claimant had a medically determinable migraine headache impairment. This evidence is what Judge Forrester's order and the Claimant's argument focus on. However, the ALJ's opinion adopted by reference an earlier thorough discussion of this evidence and further, noted his additional consideration of the previously unexamined evidence. [TR 50–54; 854–56].

As noted above, Claimant has the burden of proof at step two. Thus, she was required to provide evidence not only of the fact that she had a migraine impairment, but also that such impairment significantly limited her ability to do basic work activities. None of the medical evidence cited by the Claimant identifies any work-related physical or mental limitations imposed by this specific impairment. In fact, the severe impairments found by the ALJ and the limitations allowed for in the ultimately adopted RFC are *more* favorable to the Claimant's position than any of the restrictions advocated by the medical opinions of record. [TR 53]. Consequently, Claimant's reliance on the ALJ's severity determination as suggesting an implicit failure to consider all of the medical evidence of record is misplaced. Determination of an impairment's existence and its severity are two distinct inquiries. The ALJ complied with his duties under the statute by discussing all of the medical evidence before him. However it was Claimant's responsibility to provide a link between the evidence of her migraines and some work-related limitation that satisfied the statutory definition of "severe."

The only record evidence potentially supporting additional limitations as a result of Claimant's migraine headaches comes from her own testimony. A claimant's allegations regarding their "symptoms, including pain" need only be found to "diminish capacity for basic work activities to the extent that [the] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529. "Where there are conflicts regarding the evidence, an ALJ's findings of credibility are entitled to great deference." *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008). Substantial evidence supports the ALJ's finding Claimant's initial statement, that she was the primary daycare provider for both her grandchildren, the most credible account of her activities. [TR 855]. The significant limits later claimed in her ability to perform this activity only arose following additional questioning by Claimant's attorney. [TR

7

1053–60]. Her original statement was only qualified by a claim to aid from Claimant's stepdaughter, whom she later confirmed attended school during the daytime. [TR 1053, 1055]. A January 7, 2003, treatment note confirms Claimant's caregiving role without qualification. [TR 407].

Furthermore, examining the testimony through the deferential lens necessitated by the ALJ's credibility determination further bolster's his conclusion that Claimant's migraine headaches "had at most, a slight impact on her ability to care for these children." [TR 855]. Despite Claimant's allegations that she was afraid to pick the children up—notably, Claimant attributed such fear to the plates in her neck, not her migraines—on February 16, 2006, Claimant admitted having the ability to lift and carry twenty pounds. [TR 235]. Claimant points to no medical opinion supporting any limitations not accounted for in the RFC adopted by the ALJ, or any restrictions directly attributable to her migraines. In short, whether or not Claimant's migraines were severe in the colloquial sense, substantial evidence supports the ALJ's finding they were not "severe" under the relevant regulations.

Finally, Claimant suggests that her length of treatment, the number of physicians she saw, and the types of medication she took belie any conclusion that her migraine headaches were not severe.[1] Significant limitations are certainly one permissible inference from those facts, but that is not the only inference those facts might support. Here, the ALJ found they supported his finding the Claimant's migraines had been substantially controlled by such treatment, thus preventing any significant limit on her ability to work. When the record evidence permits two reasonable inferences, at least one of which supports the ALJ's result, this Court must affirm. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

---

[1] The Court has examined the evidence of Claimant's pituitary gland tumor, discovered shortly before her insured status expired. However, as the Commissioner notes in his response, the Claimant was required to establish evidence of severe work-related limitation *prior* to expiration of her insured status. While this evidence may lend additional credence to Claimant's allegations of having migraine headaches, it is not indicative of a contrary finding as to the "severity" of the migraines.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 6) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 7) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated March 15, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY